**David T. HARGETT, Petitioner,**

v.

**METROPOLITAN TRANSIT AUTHORITY, New York City Transit Authority, Stanley Grill, James Harding, Jr., May Mcintosh, Ken Neal, and David Ross. Respondents.**

Nos. 1:06–cv–07094–CM–KNF, 06–CV–7095 (CM)(KNF).

United States District Court, S.D. New York.

April 7, 2008.

---

David T. Hargett, pro se.

Robert Kenneth Drinan, New York City Transportation Authority, Brooklyn, NY, for defendants.

DECISION AND ORDER GRANTING
IN PART AND DENYING IN PART
RESPONDENT'S MOTION TO DIS-
MISS .

McMAHON, District Judge.

### Introduction

David T. Hargett commences this action
alleging wrongful discharge in violation of
his civil rights (42 U.S.C. § 1981), the Age
Discrimination in Employment Act
(ADEA) (29 U.S.C. § 621 *et. seq.*), and
New York State Human Rights Law § .296
(N.Y.SHRL), as well as defamation, inten-
tional infliction of emotional distress
(IIED), and breach of contract. He sues
the New York City Transit Authority
(N.Y.CTA or the Authority) and three
NYCTA executives—Stanley Grill, Vice
President (Grill), David Ross, Chief Opera-
tions Officer (Ross), and May Mcintosh,
Assistant Chief Operations Officer (Mcin-
tosh)—(collectively, the NYCTA Defen-
dants), as well as the Metropolitan Transit
Authority (MTA) and two MTA employ-
ees-Ken Neal, director (Neal), and James
Harding, Jr., commissioner (Harding) (col-
lectively, the MTA Defendants). Plaintiff
seeks compensatory and punitive damages
in connection with his termination from the
NYCTA on June 24, 2004.

Plaintiff, acting *pro se,* commenced these
cases on September 16, 2006. The cases
were reassigned to me from the docket of
the late Judge Richard Conway Casey, and
they were consolidated in a conference
with the parties on October 5, 2007. De-
fendants have moved to dismiss under
Rule 12(b)(1) and (6) of the Federal Rules
of Civil Procedure. The NYCTA Defen-
dants move to dismiss the HED, defama-
tion, and breach of contract claims as
against them, as well as to strike para-
graphs 18 through 20 of the complaint.
The MTA Defendants move to dismiss all
charges against them.

The NYCTA's partial motion to dismiss
and the MTA's motion to dismiss and are
granted. The NYCTA Defendants' motion
to strike paragraphs 18 through 20 in the
complaint is denied.

### Facts

The following well-pleaded facts are pre-
sumed to be true: Plaintiff David T. Har-
gett is an African American male who was
employed by the NYCTA Materiel Divi-
sion as an Operations Manager for five-
and-a-half years, from mid-September
1998 until his termination on June 24,
2004. (N.Y.CTA Comp. ¶¶ 1–2.) Prior to
his NYCTA employment, Hargett was a
Business Advisor in the Small Business
Development Center at Bronx Community
College. (*Id.*) The NYCTA recruited him
to his new post, where he was responsible
for managing seven fulltime employees
and some fifteen contracts valued at over
$50,000,000. (*Id.* ¶¶ 7–8.) Plaintiff under-
went finger printing and extensive back-
ground and employment checks in the pro-
cess of being hired. During his time at
the NYCTA, plaintiff had an unblemished
work record and performed well. (*Id.*
¶¶ 9, 13.)

Plaintiff reported to NYCTA defendants
Ross and Mcintosh, as well as to another
man who is not a defendant in this case.
(*Id.* ¶¶ 7, 12.) Plaintiffs initial job descrip-
tion did not include the direct management
of subordinates. (*Id.* ¶ 7.) Over time, how-
ever, his supervisors evidently began as-
signing him routinely under-performing
and problematic employees, and asked him
to fire them, "to put a black face in-charge
to disguise discrimination." (*Id.* ¶ 11.)
Plaintiff refused to fire employees he had
no history of supervising; instead, he of-
fered to manage the employees to a satis-
factory level, an endeavor with which he
appears to have had success. (*Id.* ¶¶ 10–
11.)

One such employee was a female with over 16 years experience at the NYCTA. (*Id.* ¶¶ 10–11.) According to Hargett, his supervisors constantly pressured him to take disciplinary action against her, and he did issue her two warning letters. (*Id.* ¶ 12.) At a meeting among plaintiff, Mcintosh, and the female employee shortly after the warning letters were sent, Mcintosh told the employee that this was her last transfer and that she would be fired upon any further disciplinary action. (*Id.* ¶ 12.) Plaintiff also claims he heard [that] Mcintosh instructed the employee to build a case against plaintiff to save her job. (*Id.*)

About a week later, the female employee complained of receiving inappropriate emails from Hargett. (*Id.* ¶ 13.) Plaintiff denied the allegations, but thereafter defendants initiated a comprehensive investigation into his background and credit history. (*Id.*) Claiming that Hargett had violated the company's email policy, the NYCTA suspended plaintiff without pay and without dependent care benefits on June 24, 2004. (*Id.* ¶¶ 3, 14.) Security guards escorted plaintiff from the building without his personal belongings. (*Id.* at 14.)

The female employee sent a letter to Grill about six months later recanting her charges against Hargett, and saying that while they worked together he had, "... always been professional and respectful." (*Id.* ¶ 15; Opp. Memorandum, Exh. A.) In the letter, she claimed that Mcintosh encouraged her to build an email file against the plaintiff, and that the company's Labor Relations department later urged her to make sexual harassment allegations against him and forced her to sign a statement saying that he had sent her the inappropriate emails. (Opp.Memorandum, Exh. A.) Following receipt of the letter, no new action was taken on the matter. (NYCTA Comp. ¶ 15.)

At some point, either before or after his termination, the plaintiff wrote two letters of complaint to MTA defendants Neal and Harding, alleging disparate treatment by his superiors. Plaintiff claims no action was taken on those letters. (MTA Comp. ¶ 19.)

## Standard of Review

On a motion to dismiss, the court must accept all factual allegations in the complaint as true. *In re Xethanol Corp. Sec. Litig.*, No. 06 Civ. 10234(HB), 2007 WL 2572088, at *2 (S.D.N.Y. Sept.7, 2007) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, —— U.S. ——, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007)). The *Conley v. Gibson* standard, which held that dismissal is inappropriate "unless it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief," 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), was recently "retired" by the United States Supreme Court in *Bell Atlantic v. Twombly*, —— U.S. ——, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007). The *Bell* Court held that, "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiffs obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions', and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964–65 (citations omitted). For a plaintiff to survive a motion to dismiss, his, "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965 (citations omitted). In a post-*Bell* decision, the United States Court of Appeals for the Second Circuit, interpreting *Bell*, stated, "[T]he [Supreme] Court is

not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegation in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir.2007).

## Discussion

### I. The NYCTA Defendants' Motion to Dismiss Is Granted and Motion to Strike Is Denied

The NYCTA admits that it is plaintiff's employer. The NYCTA Defendants do not move to dismiss plaintiff's claims under 42 U.S.C. § 1981, the NYSHRL, or the ADEA, but they move to dismiss plaintiff's IIED, defamation, and contract claims, as well as his claim for punitive damages. That motion is granted. The NYCTA Defendants also move to strike certain paragraphs of the complaint, and that aspect of its motion is denied.

#### A. Plaintiff's IIED Claim

##### 1. Is Plaintiff's IIED Claim Barred Because of Failure to Serve Notice of Claim?

Plaintiff alleges a claim for IIED against his employer, the NYCTA, and the individual NYCTA defendants—Grill, Ross, and Mcintosh.

■ Turning first to the claim against the NYCTA, New York Public Authorities Law § 1212 sets out specific procedures for complainants to follow in commencing tort actions against the NYCTA. It provides in pertinent part that complainants must serve notice of a claim on the NYCTA within ninety days after the claim arose, in compliance with the procedures set forth in New York General Municipal Law § 50–e. N.Y. Pub. Auth. L. § 1212(2) (2007); Gen. Municipal L. § 50–e(1)(a) (2007). The NYCTA argues-and plaintiff

does not dispute-that plaintiff failed to comply with this statutory requirement.

■ The statute also requires the plaintiff's complaint to contain an allegation that at least thirty days have passed since a notice of claim was served on the NYCTA. N.Y. Pub. Auth. L. §§ 1212(1), (4); *Walker v. N.Y.C. Transit Auth.*, No. 99 CIV. 3337(DC), 2001 WL 1098022, at *14 (S.D.N.Y. Sept.19, 2001). Plaintiff made no such allegation in the complaint he filed on September 15, 2006, and he does not now move to amend his complaint.

Therefore, plaintiffs IIED claim against the NYCTA is dismissed for failing to comply with the requirements of § 1212.

■ The notice of claim requirements do not apply to the IIED claims as against Ross, Grill, and Mcintosh—the individual NYCTA defendants. General Municipal Law § 50–e(1)(b) provides that, "Service of the notice of claim upon an officer, appointee or employee of a public benefit corporation shall not be a condition precedent to the commencement of an action . . . against such person." Therefore, service upon the individual NYCTA defendants is not defective.

##### 2. Is Plaintiff's IIED Claim Time–Barred?

Plaintiffs IIED claim against the NYCTA Defendants is time barred. Federal courts apply state statutes of limitations to intentional tort claims. *Duran v. Jamaica Hosp.*, 216 F.Supp.2d 63, 66 (E.D.N.Y. 2002). New York law sets a one-year statute of limitations for IIED. N.Y. CPLR § 215(3). Plaintiff filed his complaint on September 15, 2006, just shy of two years and three months after the date of his termination, clearly beyond the one-year statute of limitations. *See Jackson v. N.Y.C. Transit Auth.*, 274 A.D.2d 501, 712

N.Y.S.2d 377, 377 (App.Div.2000). Plaintiff's IIED claim is therefore time-barred, unless the limitations period was tolled while his Equal Employment Opportunity Commission (EEOC) claims were pending. *See Pierson v. City of New York*, 56 N.Y.2d 950, 954–55, 453 N.Y.S.2d 615, 439 N.E.2d 331 (1982).

Plaintiff attached an EEOC "right to sue" letter, dated June 21, 2006, to his complaints. Although he does not address the EEOC claim in his papers, he does respond to the NYCTA Defendants' time-barred defense by citing 42 U.S.C. § 2000e–5(e)(1), so I will consider its import.

▪ The Second Circuit has not definitively addressed whether the filing of an administrative charge with the EEOC tolls the statute of limitations as to all claims arising out of the same set of facts (as the plaintiff's claims in this case do), but, "The weight of authority . . . has held that state common law claims are not tolled during the pendency of an . . . EEOC claim." *Duran*, 216 F.Supp.2d at 68 (citing *Callahan v. Image Bank*, 184 F.Supp.2d 362, 363 (S.D.N.Y.2002): *accord Pasqualini v. MortgageIT, Inc.*, 498 F.Supp.2d 659, 668–69 (S.D.N.Y.2007)); *see also Duran*, 216 F.Supp.2d at 67 (collecting cases). Other circuits agree that the pendency of an individual's EEOC complaint does not toll a state statute of limitations. *Stordeur*, 995 F.Supp. at 100; *see, e.g., Juarez v. Ameritech Mobile Commc'ns, Inc.*, 957 F.2d 317, 322–23 (7th Cir.1992) (filing of EEOC charge did not toll the statute of limitation on employee's state law invasion of privacy claim); *Arnold v. United States*, 816 F.2d 1306, 1312–13 (9th Cir.1987) (holding state law tort claims are not tolled during pendency of Title VII action); *Dupree v. Hutchins Bros.*, 521 F.2d 236, 238 (5th Cir.1975) (finding state statute of limi-

tation for § 1981 action was not tolled during pendency of EEOC claim).

In this district, courts have come out on both sides of the question. *Compare Lamb v. CitiBank, N.A.*, No. 93–CV–2358, 1994 WL 497275, at * 8 (S.D.N.Y. Sept.12, 1994) (finding state IIED claim distinct from Title VII and § 1983 claims and thus refusing to toll statute of limitations), *with Brown v. Bronx Cross County Grp.*, 834 F.Supp. 105, 111 (S.D.N.Y.1993) (tolling claims while plaintiffs EEOC claims were pending). Courts in favor of tolling the statute of limitations as to state claims that arise out of the facts before the EEOC "have done so for two reasons: (1) to avoid duplicative litigation and judicial inefficiency, and (2) to further one of the central purposes of Title VII by allowing [administrative organizations] the opportunity to investigate allegations of employment discrimination in order to facilitate dispute resolution before litigation commences." *Duran*, 216 F.Supp.2d at 67 (quoting *Stordeur v. Computer Assoc. Int'l, Inc.*, 995 F.Supp. 94, 99 (E.D.N.Y. 1998)) (alteration in original). The rationale for not tolling the statute of limitations is that "a timely state law complaint could have been filed at the same time . . . without the prerequisite that it go before an administrative body." *Id.* at 68 (citations omitted).

Supreme Court precedent supports the latter result. In *Johnson v. Railway Express Agency*, 421 U.S. 454, 466, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), the Court held that the timely filing of an employment discrimination charge with the EEOC does not toll the running of the limitations period under 42 U.S.C. § 1981, which is set by and borrowed from state law. Absent a conflicting federal policy underlying the cause of action, the state statute of limitations should be governed by its own rules of application, tolling, and

revival. *Id.* at 464, 95 S.Ct. 1716. The Court acknowledged that Title VII "embodies a strong federal policy in support of conciliation and voluntary compliance" and that failing to toll the statute would "force a plaintiff into premature and expensive litigation that would destroy" this policy goal. Nonetheless, it found the § 1981 remedy to be fundamentally separate from and independent of the procedural labyrinth of Title VII. *Stordeur,* 995 F.Supp. at 100–01 (quoting *Johnson,* 421 U.S. at 465–66, 95 S.Ct. 1716). Based on this decision, courts have held that, "Despite the laudable interest in judicial economy expressed by courts that have tolled the state statute of limitations, [district courts] must respect the general principle that statute of limitations schemes are exclusively the prerogative of the legislature and, absent a clear legislative declaration that any tolling is permissible, the courts should be reluctant to imply one." *Duran,* 216 F.Supp.2d at 68 (citations and quotations omitted).

As with *Johnson*'s § 1981 claim, Hargett's common law tort claim for IIED offers a completely independent avenue of redress, subject to no procedural hurdles. *Stordeur,* 995 F.Supp. at 101. The receipt of an EEOC right-to-sue letter is not a condition precedent to filing a complaint alleging IIED. Plaintiff could have pursued his this purely state law claim at any time after his cause of action accrued. *Id.*

Furthermore, although claimants may pursue ADEA claims only after filing charges with the EEOC, 29 U.S.C. § 626(d) (2000), a "right to sue" letter is not required for plaintiffs to seek ADEA relief in federal court: A claimant exhausts the administrative process by withdrawing agency charges as long as he files a charge and it remains pending before the EEOC for at least 60 days. *McPherson v. N.Y.C. Dep't of Educ.,* 457 F.3d 211, 215 (2d Cir. 2006) (citation omitted). In this case, Har-

gett took no action at all, choosing, instead, to sleep on his rights.

Like the *Johnson* Court, I can think of "no policy reason that excuses petitioner's failure to take the minimal steps necessary to preserve each claim independently." 421 U.S. at 466, 95 S.Ct. 1716. Thus, plaintiff's IIED claim is dismissed as time barred against the NYCTA Defendants.

### 3. Is Plaintiffs IIED Claim Viable, if Not Time Barred?

█ Even if Hargett's IIED claim were not time barred, it would be dismissed for failing to meet New York's strict standard for pleading a claim of IIED. New York IIED requires plaintiffs to plead: (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress. *Conboy v. AT & T Corp.,* 241 F.3d 242, 258 (2d Cir.2001). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Murphy v. Am. Home Prods. Corp.,* 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983). In the employment context, "New York courts are exceedingly wary of claims for [IIED] ... because of their reluctance to allow plaintiffs to avoid the consequences of the employment-at-will doctrine by bringing a wrongful discharge claim under a different name." *Mariani v. Consol. Edison Co.,* 982 F.Supp. 267, 275 (S.D.N.Y.1997), *aff'd,* 172 F.3d 38, 1998 WL 961111 (2d Cir.1998). "The rare instances where the New York courts have found the complaint sufficient to state an IIED claim in the employment context generally involve allegations of more sig-

nificant battery, or improper physical contact." *Gilani v. Nat'l Ass'n of Sec. Dealers. Inc.,* No. 96 Civ. 8070, 1997 WL 473383, at *14 (S.D.N.Y. Aug.19, 1997).

■ In the present case, plaintiff alleges that he was wrongfully accused of sending inappropriate emails to a female subordinate; thoroughly investigated thereafter; fired for sending the emails without the opportunity to confront his accuser and despite the alleged fact that white executives were sending pornographic emails without consequence; escorted from the building by security guards; and forced to leave certain personal belongings behind. These allegations, while troubling if true, do not rise to the level of outrageousness New York law demands for a viable IIED claim. *See, e.g., Murphy,* 58 N.Y.2d at 293, 461 N.Y.S.2d 232, 448 N.E.2d 86. Thus, plaintiff fails to state an IIED claim.

### B. Plaintiff's Defamation Claim

#### 1. Is Plaintiff's Claim Barred Because of the Failure to Serve Notice of a Claim?

Like IIED claims, plaintiffs must pursue defamation claims in accordance with New York Public Authorities Law § 1212. In pursuing his defamation claim, plaintiff no more complied with that statute's service and notice requirements than he did in pursuit of his IIED claim. Therefore, that claim is dismissed as against the NYCTA.

#### 2. Is Plaintiff's Defamation Claim Time–Barred?

Defamation, like IIED, is governed by the one-year statute of limitations for intentional torts in New York. *See* N.Y. CPLR § 215(3). Therefore, plaintiff's defamation claim is time barred as against the NYCTA Defendants, for the same reasons his IIED claim was.

#### 3. Is Plaintiff's Defamation Claim Viable, if Not Time Barred?

Even if it were not time barred, plaintiffs defamation claim would fail as against the NYCTA Defendants.

■ Under New York law, the elements of a cause of action for slander are: (1) a defamatory statement of fact, (2) that is false, (3) published to a third party, (4) of and concerning the plaintiff, (5) made with the applicable level of fault on the part of the speaker, (6) either causing special harm or constituting slander per se, and (7) not protected by privilege. *Albert v. Loksen,* 239 F.3d 256, 265–66 (2d Cir. 2001). Although Hargett is not required to plead with particularity to survive dismissal under Rule 12(b)(6), state law requires him to allege in his complaint the spoken words that serve as the basis of the slander claim. CPLR § 3016; *see Daniels v. Alvarado,* No. 03 Civ. 5832(JBW), 2004 WL 502561, at *8 (E.D.N.Y. Mar. 12, 2004) (dismissing slander claim because plaintiff failed to allege "words spoken by [the defendants] that could be construed as an oral defamation"). He does not do so, so his defamation claim must be dismissed. Since the claim is time-barred (and was when filed), there is no need to grant plaintiff leave to amend.

#### 3. Plaintiff's Breach of Contract Claim Is Dismissed

■ Plaintiffs breach of contract claim must also be dismissed. New York law generally does not recognize contract liability in at-will employment relationships. Nor does it recognize a tort for wrongful discharge, or require good faith in the employment relationship. *Harrison v. Indosuez,* 6 F.Supp.2d 224, 231 (S.D.N.Y.1998) (citing *DePetris v. Union Settlement Ass'n, Inc.,* 86 N.Y.2d 406, 633 N.Y.S.2d 274, 276, 657 N.E.2d 269 (1995)). The rule is that " 'employment for an in-

definite or unspecified term' is presumed to be 'at will and … freely termina[ble] by either party at any time without cause or notice.' " *Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 137 (2d Cir. 2007) (quoting *Horn v. N.Y. Times,* 100 N.Y.2d 85, 760 N.Y.S.2d 378, 790 N.E.2d 753, 755 (N.Y.2003)) (alteration in original).

█ The at-will presumption may be rebutted if the employee is able to show: (1) that the employer made the employee aware of an express written policy limiting its right of discharge, and (2) that the employee detrimentally relied on that policy in accepting the employment. *Castro v. Local 1199,* 964 F.Supp. 719, 730 (S.D.N.Y. 1997); *see also Baron v. Port Auth. of New York & New Jersey,* 271 F.3d 81, 85 (2d Cir.2001). The New York Court of Appeals has said, "[The][m]ere existence of a written policy … does not limit an employer's right to discharge an at-will employee, or give rise to a legally enforceable claim by the employee against the employer." *De Petris,* 633 N.Y.S.2d at 276, 657 N.E.2d 269.

Plaintiff does not allege that he had a contract with any of the individual NYCTA defendants. With regard to the NYCTA itself, plaintiff has not alleged facts that will rebut the at-will employment presumption. He does not claim that he ever had a formal employment contract with the NYCTA. He purports to identify a contract arising partly out of an August 17, 1998 letter from the NYCTA that "extended an offer of employment to plaintiff stating an attractive annual salary and city residency waiver." NYCTA Comp. ¶ 42. This letter, as plaintiff himself acknowledges, is an "offer of employment"—not a

promise regarding any future performance.

█ Plaintiff further alleges that, "Defendant NYCT further represented to [him], both in oral statements and, on information and belief, through its written employment policies and manuals, that [he] would not be treated in a discriminatory fashion on account of his race." NYCTA Comp. ¶ 42. Plaintiff argues that he "relied on [the NYCTA's] representations and commitments as a term and condition of his employment relationship with defendant NYCT, and as an inducement to leave his current employer." *Id.* ¶ 43. He concludes that his termination was "a breach of these representations and commitments" giving rise to a cause of action for a breach of contract. *Id.* ¶ 44.

But the representations alleged by plaintiff do not give rise to any contract because they are inadequate as consideration. Every employer in New York is obligated not to fire employees on the basis of their race. *See* N.Y. Human Rights Law § 296(1)(a) (2007), 42 U.S.C. § 1981 (2000). The NYCTA could not give the plaintiff equal treatment rights in exchange for his employment or promise equal treatment as consideration. *See Von Bing v. Mangione,* 309 A.D.2d 1038, 766 N.Y.S.2d 131, 133 (A.D.3d Dep't 2003); Restatement (Second) of Contracts § 73. Therefore, any promise by the NYCTA that it will not discriminate against its employees on the basis of race cannot constitute the consideration necessary to create a contract of employment. *See Baron.* 271 F.3d at 85; *see also Murphy,* 58 N.Y.2d at 300–301, 461 N.Y.S.2d 232, 448 N.E.2d 86. Thus, plaintiff cannot rebut the at-will employment presumption, and his contract claim fails.[1]

---

1. The NYCTA also raises a statute of limitations defense to Hargett's contract claim, based on CPLR § 217. Under that provision,

"Any action or proceeding by a[] … former employee against an employer subject to article fourteen of the civil service law or article

### 4. Plaintiff's Request for Punitive Damages Is Dismissed

■ In connection to his relief under § 1981, plaintiff requests punitive damages from the NYCTA. The Supreme Court has held that complaining parties may not recover punitive damages against government agencies or political subdivisions. *See Kolstad v. Am., Dental Assoc.*, 527 U.S. 526, 534, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999); *see also Krohn v. N.Y.C. Police Dep't.* 2 N.Y.3d 329, 778 N.Y.S.2d 746, 811 N.E.2d 8 (2004) (holding that punitive damages not available in employment discrimination case against municipality). Furthermore, "the twin justifications for punitive damages—punishment and deterrence—are hardly advanced when applied to a governmental unit" since it is the taxpayers who are ultimately penalized. *Sharapata v. Town of Islip*, 56 N.Y.2d 332, 338, 452 N.Y.S.2d 347, 437 N.E.2d 1104 (1982); *see also Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987) (holding that the Long Island Rail Road should be exempt from liability for punitive damages because a large portion of its funding came from public sources and it served an "essential, governmental purpose" and, as a result, the burden would actually fall upon the taxpayers). Therefore, as a public benefit corporation, the NYCTA is immune from punitive damages. Accordingly, Hargett's request for punitive damages is dismissed.

twenty of the labor law, an essential element of which is that an employee organization breached its duty of fair representation to the person making the complaint, shall be commenced within four months of the date the ... former employee knew or should have known that the breach has occurred...." NY.

### 5. The NYCTA Defendants' Motion to Strike Paragraphs 18–20 of the Complaint Is Denied

The NYCTA Defendants move to "dismiss" paragraphs 18 through 20 of Hargett's complaint. Memorandum in Support of Motion to Dismiss, p. 2. Defendants do not state the authority for their motion to "dismiss"—perhaps because one does not "dismiss" paragraphs of complaints, one moves to "strike" them under Rule 12(f) of the Federal Rules of Civil Procedure, which permits the court to "strike from a pleading ... any redundant, immaterial, impertinent, or scandalous matter."

■ As a general rule, motions to strike are not favorably viewed, and will be granted only where "there is a strong reason for so doing." *M'Baye v. World Boxing Ass'n*, No. 05 Civ. 9581(DC), 2007 WL 844552, at *4 (S.D.N.Y. Mar.21, 2007) (quoting *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir.1976)). To prevail on a motion to strike, the defendant must show that: "(1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the relevant issues; and (3) permitting the allegations to stand would result in prejudice to the movant." *Id.* (citing *Roe v. City of New York*, 151 F.Supp.2d 495, 510 (S.D.N.Y.2001)).

■ The allegations set forth in paragraphs 18 through 20 contain claims of race-based discrimination that are germane to the course of discriminatory conduct that plaintiff describes in his complaint and relevant to the legitimacy of the NYCTA's claim that they fired the plaintiff

CPLR § 217(2)(b); *see, e.g., Simon v. N.Y.C. Transit Auth.*, 34 A.D.3d 823, 825 N.Y.S.2d 522, 523 (A.D.2d Dep't 2006). This statute of limitations pertains to breaches of a "duty of fan-representation" by a *union*. It has nothing to do with plaintiff's contract claims against his *employer*.

for violating the company's email policy. They allege that:

> ¶ 18: On information and belief, defendant NYCT has taken no disciplinary action against white higher ups who admitted to violating the company's email policy by sending pornographic and offensive materials to co-workers, subordinates, friends, and to the president of NYCT via the company's email system.
> ¶ 19: On information and belief, defendant NYCT has taken no disciplinary action to investigate the background, credit history and employment applications of white higher ups who admitted to violating the company's email policy.
> ¶ 20: On information and belief, defendant NYCT has not fired white higher ups who have committed extremely serious transgressions.

NYCTA Comp. ¶¶ 18–20. The NYCTA Defendants make no colorable argument for why these paragraphs should be stricken, other than claiming that they contain "opinion." They fail to make any showing whatsoever as to how the facts alleged are "redundant, immaterial, impertinent, or scandalous." Therefore, the NYCTA Defendants' motion to strike is denied.

## II. The MTA Defendants' Motion to Dismiss Is Granted

### A. The Employment Discrimination Claims against the MTA Defendants are Dismissed Because the MTA Was Not Plaintiffs Employer

First, I will address the plaintiff's wrongful discharge claims against the MTA. Wrongful discharge claims under NYSHRL, § 1981, and the ADEA lie only against an "employer." These claims are dismissed as against the MTA because the NYCTA, not the MTA, was the plaintiff's employer.

 Plaintiff's first wrongful discharge claim against the MTA is based on the ADEA. The ADEA states that, "It shall be unlawful for *an employer* to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a) (2000) (emphasis added). Under the ADEA, an entity will be considered an "employer" where there is sufficient evidence that it had immediate control over another company's employees, and, even more importantly, over the employee alleging discrimination. *Tomassi v. Insignia Fin. Grp., Inc.*, 398 F.Supp.2d 263 (S.D.N.Y.2005); *see also* 29 U.S.C. § 630(b).

 The plaintiff alleges his second wrongful discharge claim against the MTA under NYSHRL § 296. Under the pertinent provisions of the statute, it is unlawful for *an employer* to discharge an employee based on his race or age. N.Y. Exec. L. § 296(*l*)(a) (2007) (emphasis added). A given entity is an individual's "employer" based on the following factors: "1) whether the proposed employer had the power of the selection and engagement of the employee; 2) whether the proposed employer made the payment of salary or wages to the employee; 3) whether the proposed employer had the power of dismissal over the employee; and 4) whether the proposed employer had the power to control the employee's conduct." *Goyette v. DCA Advertising, Inc.*, 830 F.Supp. 737, 746 (S.D.N.Y.1993) (citation omitted). Emphasis is on the fourth factor. *Id.* (citations omitted).

 Plaintiff alleges his third wrongful discharge claim against the MTA under 42 U.S.C. § 1981. Section 1981 protects certain activities from racial discrimination, including the making and enforcement of contracts and "the full and equal benefit of

all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981 (2000). The elements of a § 1981 and NYSHRL employment discrimination claim are identical. *Reiter v. Metro. Transit Auth. of the State of New York*, No. 01 Civ. 2762(JGK), 2002 WL 31190167, at *12 (S.D.N.Y., Sept.30, 2002). To state a prima facie case of employment discrimination, both statutes require: (1) membership in a protected class; (2) satisfactory job performance; (3) termination from employment *or other adverse employment action*; and (4) that this adverse employment decision occurred under circumstances giving rise to an inference of discrimination based on membership in the protected group. *Id.* (citing *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir.2001)) (other citation omitted). However, "A complaint consisting of nothing more than naked assertions and setting forth no facts upon which a court could find a violation of [§ ] 1981 fails to state a claim under Rule 12(b)(6)." *Timmons v. City of Hartford*, 283 F.Supp.2d 712, 717 (D.Conn.2003) (citing *Martin v. N.Y. State Dep't. of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir.1978)).

■ In this case, even under a generous construction, the MTA is not and cannot be the plaintiffs "employer." Plaintiff alleges that he was hired by the MTA through its "subsidiary company," NYCTA. But unlike the Long Island Rail Road and MetroNorth, which are wholly owned subsidiaries of the MTA, the NYCTA is not an MTA subsidiary. *N.Y. Urban League v. State of New York*, 71 F.3d 1031, 1033–34 (2d Cir.1995); *see also* N.Y. Pub. Auth. L. § 1204(11) (2007) (N.Y.CTA has the power to "assist and cooperate with the [MTA] in furtherance of the purposes and powers of the [NYCTA]."). The two companies are legally separate public benefit corporations. *Id.* § 1201(1). Each can sue and be sued in its own right and each makes its own organizational and management rules and regulations. *Id.* §§ 1204(1), (4). The two corporations have different functions with respect to public transportation: the MTA handles financing and planning for a regional transit system encompassing, not just New York City, but Westchester County and point north. The NYCTA is in charge of the operation of New York City's transit system. *See Adams v. N.Y.C. Transit Auth.*, 140 A.D.2d 572, 528 N.Y.S.2d 638, 639 (A.D.2d Dep't 1998). The NYCTA's hiring and compensation schemes are its own. N.Y. Pub. Auth. L. § 1204(6); *cf. id.* § 1266(5) ("The employees of any [MTA] subsidiary corporation, except those who are also employees of the authority, shall not be deemed employees of the authority.").

The complaint's allegations are plainly insufficient to support an inference, that the MTA was plaintiff's employer. Plaintiff's complaint against the MTA merely repeats almost verbatim his claims against the NYCTA, which is alleged to have been his employer. The complaint states no facts that tend to suggest that plaintiff was employed by the MTA, had a duty to report to the MTA, or that the MTA had any control over Hargett or his work responsibilities. The MTA evidently had no involvement in his compensation, workplace responsibilities, *or the decision to hire or fire him.* Therefore, the plaintiff fails to allege any facts tending to show that the MTA was his "employer" for purposes of the ADEA, Exec. L. § 296, or § 1981 of the Civil Rights Act. All of his employment discrimination claims against the MTA must be dismissed.

Turning to the allegations against Harding and Neal (the individual MTA employees named as defendants), plaintiff similarly fails to state a claim of employ-

ment discrimination against either defendant.

Under § 1981, however, directors, officers, and employees of a corporation may be held individually liable when they intentionally cause infringement of the rights the statute protects. *Hardy v. New DN Co.*, No. 95 CIV. 5818(DLC), 1997 WL 666212, at * 12 (S.D.N.Y. Oct.24, 1997) (citation omitted). To support personal liability, the allegations "must demonstrate some affirmative link to causally connect the actor with the discriminatory action." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir.2000) (internal citations omitted). In *Hicks v. IBM*, this court found that in "each of the cases that have allowed individual liability [under § 1981], the individuals have been supervisors who were personally involved in the discriminatory activity." 44 F.Supp.2d 593, 597 (S.D.N.Y.1999).

Plaintiff alleges that, "On information and belief," Neal and Harding, both MTA officials, "took no action to investigate [Hargett's] claims of disparate treatment by his supervisor even after receiving two written complaint letters." MTA Comp. ¶ 19. Plaintiff additionally alleges that Hargett and Neal "knew of the widespread use of the company's email system by white senior management who admitted to sending pornographic materials to employee and associates, but none were fired." Opp. Memorandum at 6. Thus, he concludes, the two were "key contributors to the systematic discrimination." *Id.*

Here, Hargett does not allege that Neal and Harding (who were not employed by the NYCTA, plaintiffs actual employer),

had any legal obligation to follow up on his complaints. Nor does he allege that they were his "supervisors [and] personally involved in the discriminatory activity."

Most important, plaintiff does not allege any facts suggesting that the two MTA employees had anything to do with the decision to fire him, which is the basis of his § 1981 claim against them. Thus, the § 1981 claims against Neal and Harding must be dismissed.

Plaintiff's NYSHRL claims must also be dismissed as against Harding and Neal. As stated earlier, § 296 makes it unlawful for an employer to discharge an employee based on his race or age. N.Y. Exec. L. § 296(*l*)(a) (2007). It also prohibits any person from aiding and abetting any of the acts forbidden in the statute. *Id.* § 296(6). The Second Circuit has found that § 296 only imposes liability for discriminatory conduct on an individual only if that person (a) has an ownership interest in the employer, or is the employer, (b) has the power to make, rather than carry out, personnel decisions or (c) actually participated in the conduct giving rise to the discrimination claim. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir.1995) (citing *Patrowich v. Chem. Bank*, 63 N.Y.2d 541, 542, 483 N.Y.S.2d 659, 473 N.E.2d 11 (1984)). Plaintiff has failed to allege any of these elements.

First, plaintiff does not allege that these defendants—a "director" and a "commissioner," according to Hargett—were employees of his "employer." Rather, they are specifically alleged to be "employees of defendant MTA." MTA Comp. ¶ 4. There is no allegation that either man is plaintiff's "employer" and certainly none alleging that they had an "ownership interest in the employer," which is a public benefit corporation.

The ADEA claim is dismissed simply because individual defendants cannot be held liable under its provisions. *Parker v. Metro. Transportation Auth.*, 97 F.Supp.2d 437, 452 (S.D.N.Y.2000).

Second, plaintiff does not allege that either defendant had the authority to terminate his employment or to prevent others from doing so.

Third, as stated earlier, plaintiff alleges only that the defendants failed to take an action with respect to his complaints, without alleging any facts tending to suggest that they were actually required to do so. He has not alleged that either Neal or Harding actually participated in the conduct giving rise to the discrimination claim, or that their inaction aided and abetted his termination.

Thus, plaintiff's § 296 claims against Neal and Harding must be dismissed.

*B. Plaintiff's Tort and Contract Claims Are Dismissed*

Plaintiff's IIED, defamation, and contract claims are no more viable against the MTA Defendants than they are against the NYCTA Defendants. They fail for the same reasons that they fail against the NYCTA Defendants. The breach of employment contract claim additionally fails because the MTA never employed the plaintiff.

### Conclusion

The MTA Defendants' motion to dismiss is granted in its entirety. The NYCTA Defendants' motion to dismiss certain claims is granted, but the motion to dismiss paragraphs 18–20 of the complaint is denied.

This constitutes the decision and order of the Court.